Lance C. Venable
Michael F. Campillo
A. David Logan, Ph.D.
Joseph R. Meaney
Carey B. Anthony
John C. Mascari *

* Licensed in AZ, NY & CT



**VENABLE
CAMPILLO
LOGAN AND
MEANEY, PC**

INTELLECTUAL PROPERTY ATTORNEYS
WWW.VCLMLAW.COM

1938 East Osborn Rd.
Phoenix, AZ 85016

Voice: (602) 631-9100
Fax: (602) 631-4529

jmeaney@vclmlaw.com

January 20, 2010

**VIA Certified Mail**

Tonya Brooks, President
Will Spero, CEO
Mailers Haven, LLC
25322 Rye Canyon Road, Ste 200
Valencia, CA 91355

Re: January 14, 2010 "Sneak Peak" e-mail blast

Dear Ms. Brooks and Mr. Spero:

We represent E-Printwerx International, LLC ("EPI"). As you know from Graham Brown's confidential webinar with you last October, EPI has been developing a Data Widget that provides a cross-platform, drop-in solution for remote database access by an e-commerce site. EPI's public launch of its Data Widget is imminent. Going forward, EPI expects its revolutionary Data Widget to be the cornerstone of its business platform. EPI has had a patent pending for its Data Widget since late 2009 and expects to secure allowable claims in due course.

EPI is concerned about representations you made in a January 14, 2010 Mailers Haven email blast, specifically:

> **SNEAK PEAK!**
> We don't want to let the cat out of the bag too early, but... this month we will be completing our initial stages of an ultra simple and fast, yet powerful, Online Count System that can be integrated with any web-to-print platform. If you're currently planning to add a mailing list component to a web-to-print system, reply to this e-mail and we will be happy to run you through a BETA in the coming weeks. I guarantee you will be amazed!

It is difficult to reconcile the above statements with your promise to not to disclose or use confidential information Graham Brown shared with you during the webinar. (See attached affirmation from 10/15/2009 from Will Spero regarding Mailers Haven's obligation not to disclose or use). This breach of contract permits EPI to recover its attorney's fees in addition to any damages.

PHJM1410-003

# EXHIBIT 2

Mailers Haven                          January 20, 2010                          Page 2

It is also difficult to reconcile Mr. Spero's solicitation of Pat Wiley of Compact Information Systems at the DMA show to help Mailers Haven build its own data widget when hours before you had agreed not to disclose or use EPI's confidential information. More egregiously, your decision to breach your non-disclosure promises within hours of its making suggests that you knowingly duped EPI into disclosing its confidential information. Knowing misrepresentations to induce confidential disclosures constitutes fraud.

Finally, continuing to develop what you call your Online Count System also carries great risk with respect to EPI's pending patent. With registered patent claims, EPI can enjoin any party from making, using or selling an infringing widget. Infringing parties will also be forced to disgorge profits, with treble damages applied to willful infringers. Similarly, any party who contributes or assists to patent infringement will also be liable to the same extent as a direct infringer regardless of whether or not they actually use the infringing widget.

It makes little economic sense to expose Mailers Haven to liability for breach of contract, fraud in the inducement, unfair competition and willful patent infringement when EPI's Data Widget can not only increase your profitability, but it can enhance your relationship with Compact Information Systems, Inc. In fact, EPI had proposed that to include Compact Information System's data as part of the data that would be available to Mailers Haven customers. Moreover, EPI recently won major contracts that will result in high-volume data-purchase requirements of a type that Compact Information Systems can provide. Such approach appears to be a winning proposition in which all parties will gain significantly.

Litigation rarely makes sense for any party involved. Yet, given its investment in its Data Widget and your promises not to disclose or use EPI's confidential disclosures, EPI cannot remain idle if Mailers Haven is going to breach its non-disclosure promises and ignore its pending patent.

EPI urges you to reconsider your plans. Please contact Graham Brown directly at (480) 473-7926 to discuss this matter.

Sincerely,
VENABLE, CAMPILLO, LOGAN & MEANEY P.C.

Joseph R. Meaney
For the Firm

Enclosure: October 2009 E-mail exchange between Mailers Haven and EPI

**EXHIBIT 2**

Mailers Haven                              January 20, 2010                              Page 3

Copy To:

Pat Wiley, President
Rich Lancaster, CEO
Compact Information Systems Inc.
7120 185th Ave NE, Suite 150
Redmond, WA 98052

**EXHIBIT 2**

**Joseph Meaney**

**From:** Will Spero [will@mailershaven.com]
**Sent:** Thursday, October 15, 2009 12:13 PM
**To:** graham@eprintwerx.com; tonya@mailershaven.com
**Cc:** info@leadsplease.com
**Subject:** RE: Good Meeting You !

Thanks, Graham. We appreciate you spending your time to show us the product.

I am leaving early today and will not be back until Tuesday. I will have this signed before we talk next.

Cordially,

Will

---

**From:** Graham Brown [mailto:graham@eprintwerx.com]
**Sent:** Thursday, October 15, 2009 11:55 AM
**To:** 'Will Spero'; tonya@mailershaven.com
**Cc:** info@leadsplease.com
**Subject:** Good Meeting You !
**Importance:** High

Will & Tonya ... thanks so much for taking the time to meet, review our technology and chat earlier today.

As agreed I am attaching a Mutual Non-Disclosure Agreement for your consideration. Please scan / email or fax back to me (775) 201-3423 if you are happy with this.

I think we made some real progress this morning and I look forward to developing our relationship.

Cheers



Graham

Graham Brown

VP Sales & Marketing

**epi direct mail technology** at your fingertips

PO Box 12634
Scottsdale
Arizona 85267
tel +1 (480) 473 7926
fax +1 (775) 201 3423
toll free +1 (866) 204 4596
www.eprintwerx.com

EMAIL CONFIDENTIALITY | This email is intended to be read or used by the addressee only. It may contain confidential information. If you are not the intended recipient any use, distribution, disclosure or copying of this email is strictly prohibited. Confidentiality attached to this communication are not waived or lost by reason of the mistaken delivery to you. If you have received this email in error, please notify us immediately and delete it.

**EXHIBIT 2**

## MUTUAL CONFIDENTIALITY AND NON-DISCLOSURE AGREEMENT

THIS CONFIDENTIALITY AND NON-DISCLOSURE AGREEMENT ("Agreement") is made effective as of the 15th day of October, 2009 by and between **eprintwerx International LLC,** an Arizona corporation, with a place of business at 7682 East Campo Bello Drive, Scottsdale AZ 85255, USA and **Mailers Haven LLC.** A California corporation, with a place of business at 25322 Rye Canyon Road, # 200, Valencia, CA 91355.

---

WHEREAS the parties hereto contemplate a potential business relationship, and each party has disclosed or may disclose to the other party Confidential Information (as defined below) in connection with such potential business relationship; therefore, in consideration of the parties' discussions and any access to Confidential Information, and in reliance upon the following undertakings, the parties agree as follows:

1. Purpose: Non-Disclosure and Non-Use Obligation. The purpose of this Agreement is to assure the protection and preservation of the confidential and/or proprietary nature of information that each party has disclosed or may disclose to the other party. The party receiving Confidential Information ("Receiving Party") from the other party ("Disclosing Party") agrees that it will hold in confidence and will not (a) disseminate or in any way disclose to a third party any of the Disclosing Party's Confidential Information, or (b) make use of the Disclosing Party's Confidential Information, except to the extent necessary for negotiations, discussions, and consultations with personnel or authorized representatives of the Disclosing Party, or as otherwise authorized in writing by the Disclosing Party. Furthermore, the existence of any business negotiations, discussions, consultations or agreements between the parties shall not be disclosed or released to any form of public media without written approval of both parties. The Receiving Party shall take all reasonable precautions including, without limitation, all precautions the Receiving Party employs with respect to its own confidential and proprietary information) to ensure that all Confidential Information disclosed to it by the Disclosing Party will be maintained as confidential, adequately safeguarded and segregated, and used, disseminated or disclosed only in accordance with the terms of this Agreement. The parties agree that their respective employees shall be provided Confidential Information only on a "need to know" basis and shall be bound by the terms of this Agreement. For purposes of this Agreement, the term "employee" shall include, in addition to employees, the directors, officers, consultants, and other agents of each party. Both parties hereto understand and agree that nothing in this Agreement (i) requires either party to disclose any Confidential Information, and (ii) requires either party to proceed with any transaction, relationship or other agreement of any kind.

2. Definition of Confidential Information. Subject to the limitations set forth in Paragraph 3, Confidential Information shall be deemed to include (i) all written information of the Disclosing Party, and (ii) all oral information of the Disclosing Party. Confidential Information shall encompass any and all tangible and intangible information, whether oral or in writing or in any other medium, relating to the management, operations, intellectual property, and current, future and proposed products and services of the Disclosing Party, including, without limitation, information concerning: patents, copyrights, trade secrets, research and development, experimental work, design details and specifications, inventions, know-how, processes, procedures, sketches, drawings, models, equipment, algorithms, software programs, software source documents and formulae, computer source code, flowcharts, pseudocode, software and/or hardware design, data files, engineering data and designs, formulations, construction, processing and control, product performance data and specifications, manuals and other related documentation, systems, plans, finances and business forecasts, procurement requirements, purchasing, manufacturing, customer lists, actual and potential customers, sales and merchandising, marketing, documentation lists, orders, confirmations, leases, contracts, agreements, bills, invoices, statements, any other information that the Disclosing Party communicates to the Receiving Party in writing as being confidential, and all information that relates to Receiving Party's analysis of the Confidential Information and the uses thereof. All Confidential Information disclosed by one party to the other party prior to the execution of this Agreement shall be subject to the same treatment by the Receiving Party as the Confidential Information made available after the execution of this Agreement.

# EXHIBIT 2

3. <u>Limited Exclusions from Non-Disclosure and Non-Use Obligations</u>.

(a) The term "Confidential Information" shall not be deemed to include information which: (i) is now or hereafter becomes, through no act or failure to act on the part of Recipient, generally known or available; (ii) is known by the Receiving Party without any obligation to keep such information confidential at the time of receiving such information from the Disclosing Party, as evidenced by the Receiving Party's contemporaneous written records; (iii) is hereafter furnished to the Receiving Party by a third party, as a matter of right and without restriction on disclosure; (iv) is independently developed by the Receiving Party without any breach of this Agreement, as evidenced by its contemporaneous written records; or (v) is the subject of a prior written permission to disclose provided by the Disclosing Party.

(b) The Receiving Party may make those disclosures that are required by valid court order or other operation of law; <u>provided, however,</u> that the Receiving Party shall (i) use reasonable and diligent efforts to limit any disclosure and to obtain a protective order securing the confidential treatment of any disclosure, and (ii) give reasonable notice to the Disclosing Party prior to any disclosure, such that the Disclosing Party may participate in any proceeding regarding such disclosure.

4. <u>Ownership of Confidential Information and Other Materials</u>. All Confidential Information (including all copies thereof) and any Derivatives thereof remain the property of the Disclosing Party and shall be returned to the Disclosing Party after the Receiving Party's need for such information has expired, or immediately upon request of the Disclosing Party, and, in any event, upon the first anniversary of this Agreement. The Receiving Party acknowledges and agrees that no license or other rights to Confidential Information is granted or implied hereby. For purposes of this Agreement, "Derivatives" shall include but not be limited to: (i) for copyrightable or copyrighted material, any translation, abridgement, revision or other form in which an existing work may be recast, transformed or adapted; (ii) for patentable or patented material, any improvement thereon; and (iii) for material which is protected by trade secret, any new material derived from such existing trade secret material, including new material which may be protected by copyright, patent and/or trade secret.

5. <u>No Competitive Use or Third Party Disclosure</u>. The Receiving Party will not at any time or in any manner, either directly or indirectly, use any Confidential Information for the Receiving Party's own benefit; or divulge, disclose, or communicate in any manner any Confidential Information to any third party without the prior written consent of the Disclosing Party; or use any of the Disclosing Party's Confidential Information in any way that is directly or indirectly in competition with the Disclosing Party.

6. <u>Disclosure of Third-Party Information</u>. Neither party shall communicate any information to the other in violation of the proprietary rights of any third party.

7. <u>No Warranty</u>. All Confidential Information is provided "AS IS" and without any warranty, express, implied or otherwise, regarding its accuracy or performance.

8. <u>Compliance with Law</u>. Confidential Information shall not be used by the Receiving Party for any purpose or in any manner that would constitute a violation of any laws or regulations, including without limitation, the export control laws of the United States.

9. <u>Term</u>. This Agreement shall govern all communications between the parties that are made during the period from the effective date of this Agreement to the date on which either party provides the other party written notice that subsequent communications shall not be so governed; <u>provided, however,</u> that the termination of this Agreement shall not relieve either party of the obligations and rights imposed by Paragraphs 1, 2, 3, 4, 9 and 10. The parties' respective Non-Disclosure and Non-Use Obligations as set forth in Paragraph 1 shall continue for a period of five (5) years after termination of this Agreement, except and to the limited extent as may be earlier relieved pursuant to Paragraph 3(a).

10. <u>Specific Performance and Injunctive Relief</u>. The Receiving Party acknowledges that in the event of a breach of this Agreement, including without limitation, the actual or threatened disclosure or unauthorized use of the Disclosing Party's Confidential Information, the Disclosing Party will suffer an irreparable injury such that no remedy at law will afford it adequate protection against, or appropriate compensation for, such injury. Therefore, the Receiving Party agrees that the Disclosing Party shall be entitled to injunctive relief and/or a decree for specific performance, and such other relief as may be proper (including monetary damages if appropriate).

11. <u>Indemnification and Accounting</u>. The Receiving Party agrees to indemnify and hold harmless the Disclosing Party from and against all claims, losses, liabilities, damages, expenses, and costs (including, without limitation, reasonable attorneys' fees, expert witness and court costs) which result from a breach or threatened breach of this Agreement. The Receiving Party agrees that if it breaches this Agreement, the Disclosing Party shall be entitled to an accounting and payment of all forms of compensation or benefits that the Receiving Party directly or indirectly realizes as a result of such violation. Such remedy shall be in addition to any injunctive relief or other remedies to which the Disclosing Party may be entitled at law or in equity.

12. <u>No Assignment</u>. The Receiving Party shall not assign or transfer any rights or obligations under this Agreement without the prior written consent of the Disclosing Party, which consent shall not be unreasonably withheld. The parties' rights and obligations under this Agreement will bind and inure to the benefit of their respective successors, heirs, executors, assigns and administrators. Neither party shall act or have the authority to act as an agent of the other party for any purpose whatsoever, unless expressly authorized in writing.

13. <u>Notices</u>. Any notice required or permitted by this Agreement shall be in writing and shall be delivered to the appropriate party at the address specified above or at such other address as the party shall specify in writing. Such notice shall be deemed given (a) by personal delivery when delivered personally; (b) by overnight courier upon written verification of receipt; (c) by telecopy or facsimile transmission upon acknowledgement of receipt of electronic transmission; or (d) by certified or registered mail, postage prepaid and return receipt requested, three (3) days after mailing.

14. <u>Governing Law</u>. This Agreement shall be governed in all respects by the laws of the State of Arizona without regard to the conflicts of law provisions thereof.

15. <u>Section Headings</u>. The section headings in this Agreement are inserted only as a matter of convenience and in no way define, limit, construe or describe the scope or intent of any such section; further the section headings do not affect the operation or interpretation of this Agreement.

16. <u>Severability</u>. Should any provision of this Agreement be held by a court of law or other tribunal of competent jurisdiction to be illegal, invalid or unenforceable, the legality, validity and enforceability of the remaining provisions of this Agreement shall not be affected or impaired thereby.

17. <u>Entire Agreement</u>. This Agreement constitutes the entire agreement with respect to the Confidential Information disclosed herein and supersedes all prior or contemporaneous oral or written agreements concerning such Confidential Information. No waiver or modification of this Agreement will be binding upon a party unless made in writing and signed by a duly authorized representative of such party, and no failure or delay in enforcing any right will be deemed a waiver.

IN WITNESS WHEREOF, the parties have executed this Agreement, effective as of the date first written above.

**eprintwerx International LLC**

By: _____

Print Name: <u>Graham Brown</u>

Title: <u>VP</u>

Date: _____

**Mailers Haven LLC**

By: _____

Print Name: _____

Title: _____

Date: _____

# EXHIBIT 2