**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| DATAWIDGET, LLC,<br><br>   Plaintiff,<br><br>        v.<br><br>THE ROCKET SCIENCE GROUP LLC,<br>d/b/a MAILCHIMP,<br>   Defendant. | Civil Action No.<br>1:20-cv-02961-SDG |

## OPINION AND ORDER

This matter is before the Court on Defendant The Rocket Science Group LLC, d/b/a Mailchimp's motion to dismiss [ECF 20]. After careful consideration of the parties' briefing, the Court **GRANTS** Mailchimp's motion.

### I.     BACKGROUND

The following facts are accepted as true for purposes of this motion.[1] On October 16, 2018, non-party Joel Brown was issued U.S. Patent No. 10,102,557 (the '557 Patent).[2] The '557 Patent describes a system for selling customer-specific data subsets on websites using a data seller widget (the Widget).[3] The Widget is a

---

[1] *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1274 (11th Cir. 1999) ("At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff.").

[2] ECF 1, ¶¶ 2, 11.

[3] *Id.* ¶ 16.

piece of software that is integrated into a vendor's webpage and allows the vendor to sell data from a third-party data seller along with its own products or services.[4] In other words, the Widget pulls data, such as names and addresses, from the third-party data seller and displays that data on the vendor's webpage, allowing customers to access the data and purchase services using the data, such as the printing of direct mailers, in a single transaction.[5] Joel Brown first assigned the right to use the '557 Patent to non-party Eprintwerx International, LLC (Eprintwerx), and then assigned the right to enforce and offer limited licenses on the '557 Patent to Plaintiff DataWidget, LLC (DataWidget).[6]

Mailchimp is an e-commerce vendor that offers printing, direct-mail, and similar services to businesses.[7] Mailchimp's webpage allows its customers to search a database of information and to purchase that data at the same time it purchases printing services from Mailchimp.[8] DataWidget contends that Mailchimp is able to offer this single-transaction interface by utilizing a software

---

[4]   *Id.* ¶¶ 17–19.

[5]   *Id.* ¶ 19.

[6]   *Id.* ¶¶ 13–14.

[7]   *Id.* ¶ 35.

[8]   *Id.* ¶ 39.

application within its website that allows for a direct connection between its website and a third-party data seller's database.[9]

Based on information that non-party Compact Information Services, Inc. developed software performing the same functions as the Widget,[10] and that other non-parties were using this software in a way that infringed on the '557 Patent,[11] DataWidget contacted Mailchimp to inquire how it integrated data from data sellers into its webpage.[12] Mailchimp did not respond to DataWidget's inquiries.[13] On July 16, 2020, DataWidget filed its Complaint against Mailchimp alleging that Mailchimp's system for integrating third-party data into its webpage infringes on the '557 Patent.[14]

Mailchimp moved to dismiss the Complaint, arguing that (1) DataWidget is not the owner of the '557 Patent and therefore lacks standing to enforce it; and

---

[9] *Id.* ¶ 38.

[10] *Id.* ¶¶ 23–28.

[11] *Id.* ¶¶ 29–34.

[12] *Id.* ¶¶ 41–41; ECF 1-1.

[13] ECF 1, ¶ 43.

[14] ECF 1.

(2) DataWidget has failed to state a claim upon which relief can be granted.¹⁵ DataWidget responded to Mailchimp's motion,¹⁶ and Mailchimp filed a reply.¹⁷

## II. LEGAL STANDARD

Standing "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "In addition to constitutional standing, the Patent Act also controls standing to sue for patent infringement, providing that a 'patentee shall have remedy by civil action for infringement of his patent.'" *Merial Ltd. v. Intervet Inc.*, 430 F. Supp. 2d 1357, 1361 (N.D. Ga. 2006) (quoting *Prima Tek II, L.L.C. v. A–Roo Co.*, 222 F.3d 1372, 1376–77 (Fed. Cir. 2000) (citing 35 U.S.C. § 281 (1994)).¹⁸ Standing to sue for patent infringement, therefore, "generally rests with the patent owner(s) or the owner's assignees and not a bare licensee." *Id.* However, "[a]n exclusive license may be

---

¹⁵ ECF 20-1, at 1–2. As the Court finds that DataWidget lacks standing to enforce the Patent, it does not reach the issue of whether its Complaint states a claim for patent infringement.

¹⁶ ECF 21.

¹⁷ ECF 22.

¹⁸ In patent cases, courts apply the law of the Federal Circuit. *Mattress Safe, Inc. v. Just Encase My Mattress, Inc.*, No. 1:11-cv-2492-WSD, 2012 WL 13012363, at *5 (N.D. Ga. Jan. 30, 2012).

treated like an assignment for purposes of creating standing if it conveys to the licensee all substantial rights." *Id.*

To be considered an assignee with standing to sue under the Patent Act, an assignee or licensee must have exclusionary rights to the Patent.

> A patent represents the legal right to exclude others from making, using, selling, or offering to sell a patented invention in the United States, and from importing the invention into the United States. *See* 35 U.S.C. § 154 (1994). Implicit in the right to exclude is the ability to waive that right, i.e., to license activities that would otherwise be excluded, such as making, using and selling the patented invention in the United States.

*Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1379 (Fed. Cir. 2000). In determining whether all substantial rights were transferred by an assignment, the Court, therefore, "pay[s] particular attention to whether the agreement conveys in full the right to exclude others from making, using and selling the patented invention in the exclusive territory." *Id.*

### III. DISCUSSION

Mailchimp argues that the Complaint fails to allege DataWidget holds enough rights to be considered the Patent owner or an assignee. DataWidget counters that a single allegation, that "Joel Brown assigned his rights to the '557

Patent to DataWidget, a company that employs his father, Graham Brown,"[19] is sufficient to establish standing. But the Complaint also alleges that Joel Brown *first* assigned Eprintwerx the right to use the '557 Patent and *then* assigned DataWidget the right to enforce the '557 Patent, including the right to initiate enforcement proceedings, file lawsuits, and offer limited licenses.[20]

These allegations do not show that DataWidget possesses enough rights to be considered the Patent owner. Rather, the allegations reveal that DataWidget was assigned the right to sue, and that certain exclusionary rights to use or license the Patent remained either with Eprintwerx or Joel Brown. Indeed, the second allegation in the Complaint states that DataWidget "possesses a limited license to [Patent '557]."[21]

Though the right to sue for infringement is a substantial patent right, "because the right to sue is the means by which the patentee exercises 'the right to exclude others,'" *Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 979 (Fed. Cir. 2005), the right to sue, standing alone, does *not* confer standing. *Prima Tek II*, 222 F.3d at 1381. *See also Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d

---

[19]   ECF 1, ¶ 12.

[20]   *Id.* ¶¶ 13–14.

[21]   *Id.* ¶ 2.

1225, 1233 (Fed. Cir. 2019) (noting that Supreme Court and Federal Circuit precedent "recognize[s] a danger in allowing patentees to award a 'hunting license' to third-parties"). Transferring an enforcement right will not confer standing where, for example, another party retains the right to use and grant licenses to use the patent. *See Prima Tek II*, 222 F.3d at 1380 (plaintiff had no standing where sublicensing right was limited); *Merial Ltd.*, 430 F. Supp. 2d at 1363 (plaintiff had no standing where assignment failed to transfer the sole right to make or use the patent, to assign rights, or to grant sublicences); *KEG Techs., Inc. v. Laimer*, No. 1:08-CV-0393-JEC, 2010 WL 11508828, at *4 (N.D. Ga. Dec. 14, 2010) (noting that the right to sue becomes illusory where another party can "grant a royalty-free sublicense to any alleged infringer"). Here, the allegations in the Complaint fail to show that DataWidget possesses substantial rights beyond the rights to sue and to grant certain licenses, which are insufficient to confer standing.

In support of its position that it owns the Patent, DataWidget attached to its opposition brief the agreement between Joel Brown and Elford LLC (later renamed DataWidget), through which Brown purports to assign "all rights" to the Patent.[22] This agreement, which was not attached to the Complaint, is contradicted by the

---

[22]   ECF 21-1.

allegations in the Complaint. Further, DataWidget fails to address how this assignment is impacted by Brown's earlier assignment to Eprintwerx. Brown could not transfer what he did not have. "Whether a transfer is an assignment or a license does not depend upon the name by which it calls itself but upon the legal effect of its provisions." *Merial Ltd.*, 430 F. Supp. 2d at 1361. Accordingly, the allegations in the Complaint are insufficient to establish DataWidget's standing.

**IV.   CONCLUSION**

Mailchimp's motion to dismiss is **GRANTED**. DataWidget's Complaint is **DISMISSED WITHOUT PREJUDICE**. DataWidget is **DIRECTED** to file any Amended Complaint within 21 days of this Order. If no Amended Complaint is timely filed, the Clerk of Court is **DIRECTED** to close this case.

**SO ORDERED** this the 3rd day of May 2021.

Steven D. Grimberg
United States District Court Judge